Darrell Wayne SHERIDAN *v.* STATE of Arkansas

CR 96-1201                                         959 S.W.2d 29

Supreme Court of Arkansas
Opinion delivered January 8, 1998

Arkansas Public Defender Commission, *Didi Sallings* and *Terry Chambers*, by: *Deborah R. Sallings*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Kent G. Holt*, Asst. Att'y Gen., for appellee.

W.H."DUB" ARNOLD, Chief Justice. The appellant, Darrell Wayne Sheridan, was convicted of capital murder for the premeditated killing of his former girlfriend, Laurie Ann Brown. On direct appeal, we affirmed both his conviction and death sentence. *Sheridan v. State*, 313 Ark. 23, 852 S.W.2d 772 (1993). Thereafter, the appellant filed a petition for postconviction relief under Ark. R. Crim. P. 37. The circuit court dismissed the petition. Among the appellant's multiple points on appeal is his contention that the circuit court erred in denying relief because his defense counsel, John Wesley Hall, Jr., had a conflict of interest. Mr. Hall represented the appellant and his brother, Robert Sheridan, both of whom were charged with the capital murder of Ms. Brown. Prior to trial, Robert, under Mr. Hall's guidance, pled guilty to hindering apprehension and agreed to testify for the State in the appellant's trial. After the appellant's conviction, the charges against Robert were dropped. Because we agree with the appellant that an actual conflict of interest existed that adversely affected defense counsel's performance, we reverse and remand for a new trial.

The victim was found stabbed to death on a road leading to a Saline County cemetery. Prior to her death, she had been a passenger in a vehicle occupied by her boyfriend, Mike Coker, the appellant, his wife, Connie Sheridan, and his brother, Robert. The day after the murder, Robert, who lived with the victim's sister, was questioned by police and denied knowledge of the killing or of the appellant's whereabouts. Subsequently, Robert, Connie, and the appellant were each arrested and charged with capital murder. After giving a statement to police implicating the appellant, Connie retained Mr. Hall to represent the appellant. Robert also retained Mr. Hall, who represented both brothers at plea and arraignment. Thereafter, Mr. Hall negotiated a plea agreement with the State for Robert. In exchange for reducing the murder charge to hindering apprehension, Robert agreed to testify against the appellant at trial. Robert pled guilty to the hindering-apprehension charge, and sentencing was postponed until after the appellant's trial. After trial, the State dropped the charge against Robert.

Robert's testimony at trial included the following. The night before the murder, he told the appellant that the victim had informed the police that the appellant and Connie were dealing drugs. The next day, the appellant and his wife came to Robert's house to get directions to the victim's residence. Robert assumed that the appellant wanted to "scare" the victim. Robert accompanied the appellant and Connie to the victim's residence, where the Sheridans, the victim, and Mike began discussing the victim's statements to police. The appellant suggested that they all go to Robert's house, a "neutral" place, to talk, and the victim agreed to do so. Once in the Sheridan's vehicle, the appellant instructed Connie, who was driving, to go to the cemetery. Upon arrival at the cemetery, the appellant exited the vehicle. He instructed the victim to get out of the vehicle and stated to the remaining occupants, "Give me ten minutes." According to Robert, as the victim exited the vehicle, she stated, "Life's a bitch" or "What the fuck," indicating to him that she was not scared. The remaining occupants drove off, and, after driving a short distance, Mike, now frightened and concerned, asked to be let out of the vehicle and left to get help.

When Connie and Robert returned to the cemetery, the appellant asked Connie to open the trunk before getting in the car. Robert described his brother's demeanor as calm and methodical. He further observed that the appellant was not wearing a shirt and that his pants had blood spots on them. From the cemetery, the appellant, Robert, and Connie went to a friend's house, where the appellant asked Robert to get him another shirt. Once inside the residence, Robert watched his brother retrieve a knife from a kitchen drawer, cut his own thumb, and then smear his own blood on his pants in an attempt to cover up the victim's death and provide a reason for the blood spots. According to Robert, the appellant told him to tell Mike that he would "get him" if he said anything about the killing.

The appellant's theory at trial was that he was acting in self-defense when he caused the victim's death. According to the appellant, he took the victim to the cemetery to scare her. A methamphetamine addict, she became angry, pulled a knife on the appellant, and threatened to kill Connie and him. They struggled fiercely, and he got control of the knife and stabbed her to death.

At the appellant's Rule 37 hearing, defense counsel testified that since Robert was going to testify anyway and his testimony would not hurt the appellant, as a matter of strategy, he would be able to cross-examine Robert instead of having to call him as a defense witness. According to defense counsel, the appellant needed Robert's testimony to corroborate his account of the events. While defense counsel testified that Robert did not need to have his direct testimony impeached, he admitted that he relaxed his cross-examination of Robert because it might have backfired and turned Robert against the appellant.

We articulated the proper standard for reviewing ineffective-assistance-of-counsel claims due to alleged conflicts of interest in *Johnson v. State*, 321 Ark. 117, 124, 900 S.W.2d 940 (1995):

> Prejudice will be presumed from a conflict of interest only when the defendant demonstrates that an actual conflict of interest adversely affected his lawyer's performance. *Strickland v. Washington*, 466 U.S. 668 (1984); *Cuyler v. Sullivan*, 446 U.S. 335 (1980). Petitioner had the burden of proving a conflict of interest

and showing its adverse effects. *Dumond v. State*, 294 Ark. 379, 743 S.W.2d 779 (1988). A petitioner is not entitled to relief under the *Cuyler* test unless he satisfies both prongs of the test. *Salem v. Lockhart*, 874 F.2d 525, 527-28 (8th Cir. 1989) (*citing Lightborne v. Dugger*, 829 F.2d 1012, 1023 (11th Cir. 1987), *cert. denied* 109 S.Ct. 329 (1988)). The prejudice must be real and have some demonstrable detrimental effect and not merely have some abstract or theoretical effect. *Simmons v. Lockhart*, 915 F.2d 372, 378 (8th Cir. 1990).

In rejecting the appellant's conflict claim, the circuit court reasoned that the appellant had not shown that defense counsel had learned anything from the representation of Robert that he did not use in the appellant's defense. To the contrary, Robert's testimony, according to the circuit court, actually helped the appellant's theory of the case in several particulars. For example, Robert's testimony regarding the victim's demeanor when she got out of the car at the cemetery was that she was smiling, uttering curse words, and was not scared, though she knew that there was going to be a confrontation with the appellant. Also, according to Robert, the appellant only planned to scare the victim at the cemetery. The circuit court also referenced Robert's testimony that he did not see the appellant with a knife.

When reviewing Robert's testimony, we cannot agree that it helped the appellant's defense. While Robert testified that he assumed that the appellant only wanted to scare the victim, he also described his brother immediately after a purported knife attack by a drug-crazed woman as "calm." While Robert did testify that he did not see the appellant with a knife, he admitted that he did not know whether either one actually had a knife. He further described the appellant's methodical acts to cover up his involvement in the killing. Finally, he told the jury that his brother instructed him to threaten Mike that he would "get him" if he said anything about the killing.

We further disagree with defense counsel's conclusion that Robert was going to be testifying for the State in any event. With different counsel, perhaps, Robert might have invoked the Fifth Amendment and not testified at trial, which would have left the State with a much weaker case against the appellant. Connie, of

course, did not testify at the appellant's trial, leaving only Mike as the principal State witness, and he was not present at the cemetery after the killing. In sum, Robert's testimony was vital to the State's case.

■ We conclude that the dual representation in this case, which involved one client, Robert, entering into a plea agreement and then testifying against the other client, the appellant, created an actual conflict of interest because defense counsel did not effectively cross-examine Robert. *See United States v. Unger*, 700 F.2d 445 (8th Cir. 1983), *cert denied* 464 U.S. 934 (1983) (conflict of interest arises where counsel is unable to use his best efforts to exonerate one codefendant for fear of implicating other codefendant). Particularly, defense counsel did not elicit the fact that Robert had been initially charged with capital murder and had pled guilty to a much lesser charge in exchange for his testimony. To be sure, defense counsel could not disparage a deal that he himself had orchestrated. Furthermore, defense counsel did not point out that Robert had not been sentenced for the hindering-apprehension charge and had the potential to avoid serving time in prison if his testimony met with the approval of the State. He did not explore why Robert was testifying against his brother, nor did he point out the fact that the victim's sister and Robert were romantically involved. Finally, defense counsel admitted that he had treated Robert carefully during cross-examination. Thus, the record in the instant case "luminates the cross-purposes under which defense counsel was laboring." *Glasser v. United States*, 315 U.S. 60 (1942); *see also Austin v. Erickson*, 477 F.2d 620 (8th Cir. 1973).

■ Under these circumstances, we must conclude that the elements of the *Cuyler* test, reviewed in *Johnson v. State, supra,* were satisfied. We hold that there was an actual conflict of interest by defense counsel's dual representation and that the appellant was adversely affected due to defense counsel's failure to cross-examine a pivotal State witness effectively. In so holding, it is unnecessary to address the appellant's remaining ineffective-assistance claims.

Reversed and remanded.

THORNTON, J., not participating.