Debra WILBURN *v.* STATE of Arkansas

CR 01-357                                          56 S.W.3d 365

Supreme Court of Arkansas
Opinion delivered September 27, 2001

*John W. Yeargan, Jr.,* for appellant.

*Mark Pryor,* Att'y Gen., by: *Brad Newman,* Ass't Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. Appellant Debra Wilburn advances one point in her appeal from a judgment of conviction for solicitation to commit capital murder and from her sentence of fifteen years. She contends that the circuit court erred in denying her motion for substitution of counsel. We hold that her appeal has no merit, and we affirm.

In June 1999, Roy Lamproe and Eddie Sterling contacted the Van Buren Police Department and reported that Debra Wilburn had solicited them to kill a man who was the victim of an aggravated robbery allegedly committed by Wilburn's daughter, Angel Wilburn, for $1,500. After being wired with surveillance equipment, Lamproe and Sterling met with Wilburn at her place of employment, The Branding Iron in Van Buren, where she worked as a bartender. Wilburn told them she wanted to meet at the Shamrock Liquor Store in Fort Smith after she got off work. At that meeting which occurred around 1:00 a.m., Wilburn gave Lamproe and Sterling a guitar as "good faith money." They then drove back to the Van Buren Travel Center, where Wilburn gave the two men

a list of names of other witnesses in her daughter's case and requested that they write threatening letters to them. She also told them that there was only a week to commit the murder and that they should make it look like a "dope deal." She further directed them to wear wigs and to use shoe polish on their skin to make them look black. Later that day at a meeting at The Branding Iron, she gave them a bag containing a wig and $5.00 for bullets. She also gave them her telephone number and told them to call her when the job was done. At the direction of the Van Buren police officers, the two men called Wilburn at 11:20 p.m. and told her that the murder had been committed. She told Lamproe that after he left town, she would wire him the $1,500 pursuant to their agreement. After that telephone conversation, Van Buren police officers arrested Wilburn at The Branding Iron.

On June 8, 1999, Wilburn was charged with conspiracy to commit capital murder. The State later filed an amended information, charging Wilburn with solicitation to commit capital murder. Prior to trial, her attorney, John Van Winkle, moved to withdraw as counsel because Wilburn had refused to stay in contact and to cooperate with counsel. The motion was granted, and public defender Robert C. Marquette was appointed as Wilburn's attorney.

On September 1, 2000, Marquette moved for appointment of substitute counsel. In that motion, he claimed that Wilburn and Lamproe, the State's key prospective witness, were Public Defender clients "who have exchanged confidential information with this attorney." That same day, Marquette wrote to the circuit court and advised the court that Lamproe was a client who had revealed certain information to him which could be used against Lamproe at Wilburn's trial. He added that he had spoken with the prosecutors in the case and they agreed that Marquette had a conflict of interest. Hence, they did not oppose the motion.

On September 11, 2000, the circuit court held a hearing on the motion to substitute and questioned Lamproe, whom Marquette had represented in two previous cases. The court determined that Marquette had not discussed Wilburn's case with Lamproe and further observed that, in any event, Marquette could only question Lamproe on cross-examination regarding matters that were of public record. The circuit court then denied the motion to substitute. Marquette renewed the motion at the conclusion of the state's case, the conclusion of the defendant's case, and at the close of all the evidence. The motions were denied.

The gravamen of Wilburn's appeal is that Marquette was limited in cross-examining Lamproe because he could not delve into certain confidential information learned in his earlier representation of Lamproe. This information, according to Wilburn, could have been used to attack Lamproe's credibility. Thus, she contends, she was denied the right to confront the State's key witness against her and was denied due process.

■ There is no previous Arkansas case directly on point where a defense attorney seeks to disqualify himself from representing a criminal defendant due to a conflict of interest caused by the prior representation of a state witness. We do have authority, however, for the situation where a party, opposing counsel, or the circuit court seeks to disqualify an attorney because of a conflict of interest. In *Craig v. Carrigo*, 340 Ark. 624, 633, 12 S.W.3d 229, 235 (2000), we set out the standard of review for the disqualification of trial counsel:

> We review a trial court's decision to disqualify an attorney under the abuse-of-discretion standard. *Seeco, Inc. v. Hales*, 334 Ark. 134, 969 S.W.2d 193 (1993); *Berry v. Saline Memorial Hosp.*, 322 Ark. 182, 907 S.W.2d 736 (1995). An abuse of discretion may be manifested by an erroneous interpretation of the law. *Seeco, supra.* We have held that the Model Rules of Professional Conduct are applicable in disqualification proceedings. *Berry, supra*; *See also, Saline Memorial Hosp. v. Berry*, 321 Ark. 588, 906 S.W.2d 297 (1995); *Norman v. Norman*, 333 Ark. 644, 970 S.W.2d 270 (1998).

Although it is true that the cases enunciating this standard are civil, we see no reason why the same standard should not apply in the criminal context.

■ The United States Supreme Court has held that where a constitutional right to counsel exists, there is a correlative right to representation that is free from conflicts of interest. *See Wood v. Georgia*, 450 U.S. 261 (1981). In *United States v. Agosto*, 675 F.2d 965 (8th Cir. 1982) (abrogated on other grounds by *Flanagan v. United States*, 465 U.S. 259 (1984)), the Eighth Circuit Court of Appeals reviewed an interlocutory appeal from a pretrial order disqualifying several defense attorneys due to a conflict of interest. In its analysis, the Eighth Circuit defined "successive representation" as a situation "where an attorney representing a defendant has previously represented codefendants or trial witnesses." *Id.* at 970. According to the court, there are two types of conflicts that may

arise in these cases: (1) an attorney may be tempted to use confidential information to impeach a former client, or he may fail to conduct a rigorous cross-examination for fear of misusing confidential information, where privileged information is obtained that might be relevant to cross-examination; and (2) an attorney's pecuniary interest in possible future business may cause him to make trial decisions with a goal of avoiding prejudice to the client he formerly represented. *See id.* at 971. Wilburn does not cite us to *United States v. Agosto, supra,* but the problem of successive representation appears to be the issue in the case at hand.

At the pretrial hearing on Marquette's motion to substitute, this colloquy transpired between Marquette and the court:

> MARQUETTE: Judge, the reason for the letter was I had represented Roy [Lamproe] before. Roy, I don't even know if you understand what all is going on here, but I'd represented Roy before and during the process of my representing Roy, he and I have talked and discussed different things . . .

> THE COURT: . . . you haven't talked about this case, though?

> MARQUETTE: No, sir, not about this case, but the problem would be and one of my concerns would be if there was something Roy had told me in confidence expecting an attorney/client privilege that I would . . .

> THE COURT: . . . well, you wouldn't have anything, Bob, if you haven't talked to him about this case. What would you have in confidence with him about this case?

> MARQUETTE: If I learned things that he had done in his life, or things regarding his character. And I use that to attack his credibility as a witness, that's what I'm concerned with. But, no, as far as discussing this case . . .

> THE COURT: . . . I think you can only ask him things that are public record, felonies — conviction of felonies, you'd be permitted to do that, that wouldn't be in confidence. The Court's going to deny your motion, you need to get ready to try this case.

Although Marquette properly brought the possibility of a conflict of interest to the circuit court's attention, no real or concrete conflict of interest was ever demonstrated to that court; nor was any real impediment to his representation of Wilburn. In his motion to

substitute, Marquette merely stated that both Wilburn and Lamproe were public defender clients who had exchanged confidential information with him. In his letter to the circuit court, Marquette again stated that the "problem is that the individual in question [Lamproe] is a client and has revealed certain information to me which could be used against him at trial[.]" Finally, at the hearing on the motion, Marquette stated that "the problem would be and one of my concerns would be *if* there was something Roy had told me in confidence expecting an attorney/client privilege that I would. . . ." (Emphasis added.) When questioned by the court as to specifics, Marquette merely replied, "If I learned things that he had done in his life, or things regarding his character. And I use that to attack his credibility as a witness, that's what I'm concerned with."

■■ The cornerstone principle in all conflict cases is whether prejudice will result to the client as a result of the conflict of interest. *See Sheridan v. State*, 331 Ark. 1, 959 S.W.2d 29 (1998). That prejudice must be real and have some demonstrable detrimental effect on the client and not merely be abstract or theoretical. *See Simmons v. Lockhart*, 915 F.2d 372 (8th Cir. 1990); *Sheridan v. State, supra*. In the case before us there is no demonstrable detrimental effect shown. Rather, we are left to rank speculation about whether Wilburn's counsel was hampered or impaired in any respect by the prior representation of Lamproe. Certainly, he never stopped the trial to advise the circuit court that his cross-examination of Lamproe was impeded. And a review of the record of Marquette's cross-examination of Lamproe shows that he did a thorough and exact job.

■ As a final point, we are not convinced that Model Rules of Professional Conduct 1.7 and 1.9 require Marquette's disqualification as Wilburn contends. The court determined that Lamproe had told Marquette nothing about the Wilburn matter and that Marquette, as would be the case with any other defense counsel, could cross-examine Lamproe on matters of public record. We have held that the Model Rules of Professional Conduct are applicable to the issue of whether counsel should be disqualified. *See Norman v. Norman*, 333 Ark. 644, 970 S.W.2d 270 (1998). However, we are at a loss to see the pertinence of the Model Rules or the *Norman* case, where Marquette's representation of Lamproe, and the character information allegedly obtained, had nothing to do with Wilburn's case. In short, Wilburn is simply not convincing as to why this alleged confidential information should equate to automatic disqualification.

■ We are cognizant of the fact that Wilburn was not privy to what bothered her counsel about his prior representation of Lamproe because the information was confidential. Nonetheless, we are convinced that Marquette had to show more to the circuit court to support disqualification. That was not done, and this court will not presume that Wilburn was prejudiced as a result. *See Gatlin v. State*, 320 Ark. 120, 895 S.W.2d 526 (1995) (stating that the court does not presume prejudice when error is alleged). We cannot say that under these facts the circuit court abused its discretion in failing to disqualify Marquette.

Affirmed.