Laveris Darnell TOWNSEND *v*. STATE of Arkansas

CR 01-822                                                      85 S.W.3d 526

Supreme Court of Arkansas
Opinion delivered September 26, 2002
[Petition for rehearing denied October 31, 2002.]

*Clark & Spence*, by: *George R. Spence*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Vada Berger*, Ass't Att'y Gen., for appellee.

T OM GLAZE, Justice. Laveris Townsend was convicted of aggravated robbery, rape, and being a felon in possession of a firearm, and was sentenced to a total of ninety-five years. We accept jurisdiction of this appeal because it involves significant issues needing clarification of the law.

Townsend was originally charged with two counts of aggravated robbery, multiple counts of rape, being a felon in possession of a firearm, and being a habitual offender. The charges stemmed from two robberies in Fayetteville: one at the Red Roof Inn on October 1, 2000, and the second at the Hampton Inn on October 10, 2000. The two cases were severed for trial, and the Hampton Inn robbery was tried first.

Immediately prior to Townsend's first trial, on January 23, 2001, Townsend's attorney, Joel Huggins, filed a motion to withdraw. At a hearing on the motion, Huggins informed the court that he had discovered just the night before that Townsend had filed a civil lawsuit against him in federal court. In that lawsuit, Townsend alleged that Huggins had given him bad advice and had conspired with the Fayetteville Police Department to deprive Townsend of his civil rights. Huggins asked the trial court to permit him to withdraw from further representation of Townsend because of an irreconcilable conflict of interest. The trial court denied the motion, opining that Huggins was a competent attorney and that Townsend would "suffer no prejudice whatsoever" if Huggins continued to represent him.

Townsend was subsequently tried and convicted for the Hampton Inn robbery, but the court of appeals reversed his conviction in *Townsend v. State*, 76 Ark. App. 371, 66 S.W.3d 666

(2002) (*Townsend I*), on the grounds that the trial court had erred in denying Huggins's motion to withdraw. In that opinion, delivered January 30, 2002, the court of appeals held that the trial court's cursory examination of the situation warranted reversal, stating as follows:

> Pursuant to *Holloway* [*v. Arkansas*, 435 U.S. 475 (1978)], the trial court has a duty, when an objection at trial brings a potential conflict of interests to light, to either appoint different counsel or to take adequate steps to ascertain whether the risk of a conflict of interests was too remote to warrant different counsel. We agree with [Townsend's] argument that the trial court failed to do so in the case at bar. Here, the record shows that the trial judge made only a cursory investigation of the circumstances of the asserted conflict, and summarily ruled on the motion to be relieved in the absence of any information concerning the lawsuit filed against defense counsel. Consequently, we reverse and remand on this point.

*Townsend*, 76 Ark. App. at 373.

Townsend's trial on the Red Roof Inn robbery and rape charges began on April 12, 2001, and Huggins renewed his motion to withdraw just before the trial commenced, reminding the court that he had alleged a conflict existed due to Townsend's federal lawsuit. The trial court, however, noted that the federal court proceedings had been terminated, and denied Huggins's motion. Townsend was convicted, and argues again in this appeal to our court that the trial court erred in denying Huggins's motion to withdraw. He also asserts that the trial court erred in denying his motion to suppress various identifications made of him.

■ The main issue for this court to decide is whether the so-called "automatic reversal rule" established in *Holloway v. Arkansas, supra*, is applicable to Townsend's case. The rule in *Holloway* applies when conflicts of interest arise from defense counsel's being forced to represent codefendants over a timely objection. Here, on the other hand, the defendant (Townsend) caused a conflict with his attorney to exist when he sued Huggins while Huggins was representing him in a pending criminal case.

■ In *Holloway*, upon which Townsend relied in *Townsend I* and continues to rely in the present appeal, the Supreme Court considered whether or not removal of an attorney was mandated when the attorney simultaneously represented multiple codefendants in a single criminal case. Defense counsel in *Holloway* had objected that he could not adequately represent the divergent interests of three codefendants, but the trial court, without inquiry, denied counsel's motions for the appointment of separate counsel. The Supreme Court reversed, holding that "*joint representation* of conflicting interests *is inherently suspect*," because counsel's conflicting obligations to multiple defendants "effectively sea[l] his lips on crucial matters" and make it difficult to measure the precise harm arising from counsel's errors. *Holloway*, 435 U.S. at 489-90 (emphasis added). The critical error in *Holloway* was the trial court's failure "either to appoint separate counsel *or to take adequate steps to ascertain whether the risk was too remote to warrant separate counsel.*" *Id.* at 484 (emphasis added). It was on this basis that the Arkansas Court of Appeals reversed Townsend's convictions in *Townsend I*.

■ However, after the *Townsend I* opinion, the Supreme Court decided the case of *Mickens v. Taylor*, 535 U.S. 162, (2002), wherein the Court, among other things, further explained and analyzed *Holloway*. In *Mickens*, the Court rejected the argument that automatic reversal is required whenever a trial court neglects a duty to inquire into a potential conflict.[1] Instead, the Court held that "an actual conflict of interest" means "a conflict that *affected counsel's performance*, as opposed to a mere theoretical division of loyalties." *Mickens*, 122 S. Ct. at 1243 (emphasis in original). The *Mickens* Court, quoting *Cuyler v. Sullivan*, 446 U.S. 335 (1980), stated that "a defendant who shows that a conflict of interest *actually affected the adequacy of his representation* need not demonstrate prejudice in order to obtain relief." *Id.* (citing *Cuyler*, 446 U.S. at 349-50) (emphasis in original). Until a defendant shows that his counsel *actively represented* conflicting interests, he has not estab-

---

[1] *Mickens* was not a multiple-representation case. There, Mickens had an appointed attorney who had previously defended the victim whom Mickens murdered. The judge appointing Mickens's attorney did not know the attorney had represented the victim, nor did the attorney disclose the fact.

lished the constitutional predicate for his claim of ineffective assistance. Thus, in the absence of an "actual conflict," a defendant alleging counsel's performance was deficient due to a conflict must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 1240. In other words, an analysis of a conflict of interest under *Mickens* requires the same kind of analysis — and the same kind of *demonstration* of prejudice — that is required under *Strickland v. Washington*, 466 U.S. 668 (1984), as opposed to the *presumption* of prejudice (and the consequent automatic reversal) that was explained in *Holloway*.

In *Holloway*, one attorney was forced to represent three codefendants on the same charges; the problem was that the attorney felt hampered in his ability to cross-examine one defendant with confidential information he had learned from the other defendants. As discussed above, the *Holloway* Court concluded that the *presumption* of prejudice was justified because joint representation of conflicting interests is inherently suspect. Thus, according to the *Mickens* Court, *Holloway* creates an automatic reversal rule only where defense counsel is forced to represent codefendants over a timely objection, unless the trial court has determined that there is no conflict. Here, however, the nature of the conflict present in Townsend's case is distinguishable from the kind of conflict described in *Holloway*. Townsend's "conflict" is of his own making; it does not involve multiple representations of codefendants by a single attorney, but instead occurred when Townsend filed a lawsuit against his lawyer. Thus, we must determine whether or not Townsend has demonstrated prejudice from the trial court's refusal to permit Huggins to withdraw.

Before reaching this analysis, we additionally note that this *Strickland*-type determination of the existence of prejudice, required by *Mickens*, is in keeping with our own holdings. In *Wilburn v. State*, 346 Ark. 137, 56 S.W.3d 365 (2001), an attorney-disqualification case, we held that this court reviews a trial court's decision to disqualify an attorney under an abuse-of-discretion standard. There, this court first noted Supreme Court cases holding that where a constitutional right to counsel exists, there is a

correlative right to representation that is free from conflicts of interest. In addition, the *Wilburn* court stated the following:

> The cornerstone principle in all conflict cases is whether prejudice will result to the client as a result of the conflict of interest. *See Sheridan v. State,* 331 Ark. 1, 959 S.W.2d 29 (1998). That prejudice must be real and have some demonstrable detrimental effect on the client and not merely be abstract or theoretical. *See Simmons v. Lockhart,* 915 F.2d 372 (8th Cir. 1990); *Sheridan v. State, supra.*

*Wilburn,* 346 Ark. at 143.

■ Prejudice will be presumed from a counsel's conflict of interest only when the defendant demonstrates that counsel actively represented conflicting interests. *Price v. State,* 347 Ark. 708, 66 S.W.3d 653 (2002) (citing *Cuyler v. Sullivan, supra; Johnson v. State,* 321 Ark. 117, 900 S.W.2d 940 (1995)). *See also Davis v. State,* 345 Ark. 161, 44 S.W.3d 726 (2001) (holding that prejudice is presumed from a conflict of interest *only when the defendant demonstrates that an actual conflict of interest adversely affected his lawyer's performance*). In the absence of a showing of prejudice, we will find no abuse of discretion in the trial court's decision to deny counsel's motion to withdraw.

■ ■ Here, Townsend fails even to allege that Huggins's performance was deficient; his argument is limited to the trial court's failure to inquire further about the alleged conflict. However, even if Townsend had attempted to argue that Huggins's performance was deficient, a review of the trial proceedings reveals otherwise. Huggins's conduct at trial was professional and thorough. In addition, the federal lawsuit had been dismissed by the time these charges came to trial, so any potential conflict between Townsend and Huggins was obviated. In sum, Townsend failed to prove that he was in any way prejudiced by his attorney's performance, and without such a showing, under *Mickens,* the trial court's failure to inquire further into the alleged conflict of interest cannot constitute grounds for reversal. Additionally, insofar as *Townsend v. State,* 76 Ark. App. 371, 66 S.W.3d 666 (2002), is inconsistent with this opinion, we overrule that decision.

For his second point on appeal, Townsend argues that the trial court erred in denying his motion to suppress the various identifications made of him, contending that these identifications were the result of an illegal detention. Specifically, he asserts that his initial contact with police lasted more than fifteen minutes. On this issue, Ark. R. Crim. P. 3.1 provides as follows:

> A law enforcement officer lawfully present in any place may, in the performance of his duties, stop and detain any person who he reasonably suspects is committing, has committed, or is about to commit (1) a felony, or (2) a misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to property, if such action is reasonably necessary either to obtain or verify the identification of the person or to determine the lawfulness of his conduct. An officer acting under this rule may require the person to remain in or near such place in the officer's presence for a period of not more than fifteen (15) minutes or for such time as is reasonable under the circumstances. At the end of such period the person detained shall be released without further restraint, or arrested and charged with an offense.

Townsend argues that, because he was detained for a total of thirty-two minutes, his initial detention was in excess of the fifteen minutes permitted by the rule and therefore unlawful, and the subsequent identifications made of him on the basis of that stop should have been suppressed. In reviewing the trial court's denial of a suppression motion, we make an independent examination based on the totality of the circumstances, and reverse only if the trial court's ruling was clearly against the preponderance of the evidence. *Muhammad v. State*, 337 Ark. 291, 988 S.W.2d 17 (1999); *Burris v. State*, 330 Ark. 66, 954 S.W.2d 209 (1997).

Fayetteville Police Detective Tim Franklin testified at the suppression hearing that he stopped Townsend because Townsend matched the description given of the suspect in both the Red Roof Inn and Hampton Inn robberies. After being stopped, Townsend repeatedly gave Franklin false names and social security numbers, and in fact, during the thirty minutes that he was being detained by the police, Townsend never offered his correct name.

Rule 3.1 allots an officer fifteen minutes or "such time as is reasonable under the circumstances." Townsend repeat-

edly lied to the officer about his identity, so any delay in obtaining or verifying his identity was his own fault. A defendant cannot be allowed to abort or frustrate the process of justice by his own actions. *See Lee v. State*, 343 Ark. 702, 38 S.W.3d 334 (2001); *Morgan v. State*, 308 Ark. 627, 826 S.W.2d 271 (1992).

For the foregoing reasons, we affirm Townsend's convictions.