2009 Ark. 255

**Ledell LEE, Appellant,**

**v.**

**STATE of Arkansas, Appellee.**

**No. CR 08–160.**

Supreme Court of Arkansas.

May 7, 2009.

Durrett & Coleman, by: Gerald A. Coleman; and Ford, Glover and Roberts, by: Danny W. Glover, Wynn, West Memphis, for appellant.

Dustin McDaniel, Att'y Gen., by: Lauren Elizabeth Heil, Ass't Att'y Gen., for appellee.

ROBERT L. BROWN, Justice.

On February 9, 1993, twenty-six year-old Debra Reese was found murdered. She had been beaten approximately thirty-six times with a tire thumper and strangled. The appellant, Ledell Lee, was arrested and charged with capital murder. His first trial ended in a mistrial in 1994

because the jury could not reach a unanimous verdict. The State then tried Lee again, and a jury found him guilty of capital murder on October 12, 1995, and sentenced him to death by lethal injection on October 16, 1995. This court affirmed the conviction and sentence on direct appeal. *Lee v. State*, 327 Ark. 692, 942 S.W.2d 231 (1997) (*Lee I*).

Lee subsequently filed a petition for postconviction relief pursuant to Arkansas Rule of Criminal Procedure 37 in which he alleged that his trial attorneys had rendered ineffective assistance of counsel during the guilt and penalty phases of his second trial. The circuit court held two separate hearings on the matter, on January 20 and 21, 1999, and on March 30, 31 and April 1, 1999. Following these hearings, the circuit judge denied Lee's petition, and this court affirmed. *Lee v. State*, 343 Ark. 702, 38 S.W.3d 334 (2001) (*Lee II*). Petitions for habeas corpus relief in federal court then followed, which culminated in a stay of those proceedings until an issue related to impairment of counsel at the first Rule 37 hearings in 1999 could be resolved by state courts.

On August 30, 2005, Lee moved this court to recall the mandate in *Lee II* on grounds that his attorney in the postconviction proceedings rendered ineffective assistance of counsel. Lee maintained, and this court later found, that his postconviction attorney suffered from a substance-abuse problem and had been intoxicated during the initial Rule 37 proceedings in 1999. As a result, this court granted Lee's motion to recall the mandate and remanded the matter to the circuit judge for further proceedings.

*Lee v. State*, 367 Ark. 84, 238 S.W.3d 52 (2006) (*Lee III*).

After this court's decision in *Lee III*, Lee filed an amended petition for postconviction relief under Arkansas Rule of Criminal Procedure 37. The circuit judge held another hearing on August 28, 2007, and subsequently denied Lee's petition and entered findings of fact and conclusions of law on November 21, 2007. It is from these findings that Lee now appeals.[1]

It is well established that the right to counsel, guaranteed by the Sixth Amendment to the United States Constitution, is "the right to effective assistance of counsel." *See, e.g., Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The United States Supreme Court has held that the question in determining whether an attorney rendered constitutionally ineffective assistance of counsel is "whether the counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* Therefore, to prove a right to postconviction relief based on a claim of ineffective assistance of counsel, a petitioner must show (1) that "counsel's representation fell below an objective standard of reasonableness," and (2) that counsel's particular errors "actually had an effect on the defense." *Id.* at 688, 693, 104 S.Ct. 2052.

It is also well settled that there is a strong presumption that the trial counsel's representation falls within the wide range of reasonable professional assistance. *See Wainwright v. State*, 307 Ark. 569, 574, 823 S.W.2d 449, 451 (1992). The

---

1. Lee's current appeal has been delayed by an additional five months because his counsel twice submitted deficient briefs that did not conform to this court's rules. This court issued two per curiam opinions, which ordered rebriefing by Lee. *Lee v. State*, 375 Ark. 421, 291 S.W.3d 188 (2009) (per curiam); *Lee v. State*, 375 Ark. 124, 289 S.W.3d 61 (2008) (per curiam).

appellant has the burden of overcoming the presumption by identifying specific acts and omissions that, when viewed from counsel's perspective at the time of trial, could not have been the result of reasonable professional judgment. *Id.* According to the second prong of the *Strickland* test, even if counsel's conduct is shown to be professionally unreasonable, the judgment will stand unless the petitioner can demonstrate that the error had an actual prejudicial effect on the outcome of the proceeding. *Strickland,* 466 U.S. at 691, 104 S.Ct. 2052. In short, the appellant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052.

On review, this court will not reverse a denial of postconviction relief unless the circuit court's findings are clearly erroneous or clearly against the preponderance of the evidence. *See, e.g., Gaye v. State,* 2009 Ark. 201, 307 S.W.3d 1. A finding is clearly erroneous, even if there is evidence to support it, when the appellate court, after review of the entire evidence, is left with the definite and firm conviction that a mistake has been made. *Id.*

As a preliminary matter, we note that the State urges this court to apply the doctrine of law of the case to a number of Lee's arguments on appeal. The State specifically contends that Lee makes the same arguments as were made in *Lee II,* and the evidence before this court is materially the same as what we considered in *Lee II.* The doctrine of law of the case provides that "the decision of an appellate court establishes the law of the case for the trial upon remand and for the appellate court itself upon subsequent review." *See, e.g., Zawodniak v. State,* 339 Ark. 66, 68, 3 S.W.3d 292, 294 (1999). Law of the case does not apply in the instant appeal because this court recalled the mandate of *Lee II* in *Lee III* and reopened Lee's postconviction proceeding based on our determination that Lee had not had the benefit of effective counsel at the Rule 37 proceedings in 1999. We reject the State's argument on this point.

## I. *The Guilt Phase*

Lee was represented during the guilt phase of his trial by William Simpson, Chief Public Defender for the Sixth Judicial District, and Bret Qualls, an attorney with the State Trial Public Defender's Office.

### A. *Conflict of Interest* [2]

Lee claims initially on appeal that the circuit judge erred in finding that he failed to show that his attorneys' per-

---

**2.** Lee argued before the circuit judge at the August 2007 hearing that Judge Piazza was engaged in a personal relationship with deputy prosecuting attorney, Melody Larue, during the second trial and that Simpson and Qualls rendered ineffective assistance of counsel because they did not seek the recusal of Judge Piazza based on that alleged relationship. In the alternative, Lee argued that the State violated his right to due process and a fair trial by failing to disclose the relationship to defense counsel. The circuit judge found that Lee failed to present evidence that there was an improper relationship between Judge Piazza and Larue at the time of Lee's second trial.

In the brief on appeal in the instant case, Lee's attorney wrote that Lee wished to appeal the circuit judge's findings on this point but that he, the attorney, "determined that said argument is not one that should be pursued." Lee's attorney suggested, in the brief, that he would petition this court to withdraw as counsel, so that new counsel could file an amended and substituted brief, which would argue this point on appeal. However, Lee's counsel did not petition to withdraw as counsel, and no amended and substituted brief was filed with this court. Therefore, this argument was not made to this court, and we decline to address it.

formance was affected by an actual conflict and that he had waived any conflict that may have existed.

The surrounding facts for this point are these. After Lee was charged with capital murder for the death of Debra Reese, he became a suspect in several other crimes—a second capital murder case and three rape cases—for which he was later charged.[3] The Reese murder was assigned to Pulaski County Circuit Court, Second Division, while the second capital murder case was assigned to the Seventh Division, and the three rape cases were assigned to the First Division. Simpson and Qualls were appointed to represent Lee in all five cases.

As already noted, in 1994, the first trial in the Reese murder ended in a mistrial because of a hung jury. During that time, the other four cases against Lee were pending. In early February 1995, Lee, acting pro se, moved First Division Judge Marion Humphrey to relieve Simpson and Qualls as counsel in the rape cases based on an alleged conflict of interest. After a hearing on the pro se motion, on February 17, 1995, Judge Humphrey, without stating his reasons, found that a conflict existed and granted Lee's request to have Simpson and Qualls relieved as counsel in the rape cases. Judge Humphrey then appointed Dale Adams to represent Lee in those cases.[4]

Following Judge Humphrey's decision, Simpson and Qualls sought a hearing in Second Division to determine the status of the public defender's office in the Reese murder case. On February 22, 1995, Judge Chris Piazza heard the matter and stated that the conflict in the First Division did not govern the issue. He said: "Judge Humphrey can't declare there is a conflict up there and have any bearing on this case."[5] On March 8, 1995, Judge Piazza found that there was no conflict between Lee and his attorneys and again refused to relieve Simpson and Qualls.

Judge Piazza held two other hearings during which Simpson and Qualls requested that they be relieved as counsel, and in both cases, Judge Piazza refused their requests.[6] Simpson then filed a petition for writ of certiorari with this court on April 25, 1995, in which he alleged that there was "an intolerable conflict between himself and [Lee]." He asked this court to relieve Qualls and him as counsel in the Reese murder case. This court denied the petition and declined to hold that Judge Piazza "committed a plain, manifest, clear, great, or gross abuse of discretion in refusing to relieve the public defender." *Simpson v. Pulaski County Cir. Ct.*, 320 Ark. 468, 899 S.W.2d 50 (1995).

---

**3.** Lee was charged with capital murder for the murder of Christine Lewis; his trial ended in a hung jury; a mistrial was declared; and the case was nolle prossed in 1997. Lee was charged with raping J.P. and was convicted and sentenced to 60 years in prison. Lee was charged with raping L.D. and was convicted and sentenced to life in prison. Lee was charged with raping A.S., and the case was nolle prossed after Lee received the death penalty in the instant case.

**4.** Adams also represented Lee during the penalty phase of the Reese trial, the instant matter.

**5.** Judge Piazza also said that he would "give Mr. Lee a chance to file his brief" and set another hearing date.

**6.** On March 23, 1995, Simpson argued that he would have a problem of inconsistent strategies if he were required to continue to represent Lee in the Reese murder case. On April 21, 1995, Simpson alerted the court that he had received a copy of a document, which was purportedly a civil lawsuit against him by Lee. Simpson also told Judge Piazza that Lee would not discuss the case or cooperate with him or Qualls. Lee told Judge Piazza that he did not trust Simpson or Qualls.

On appeal, a criminal appellant is entitled to a presumption of prejudice only when he demonstrates that an actual conflict of interest adversely affected his lawyer's performance. *See Sheridan v. State,* 331 Ark. 1, 4, 959 S.W.2d 29, 31 (1998) (citing *Strickland,* 466 U.S. 668, 104 S.Ct. 2052). The petitioner has the burden of proving a conflict of interest and of showing its adverse effects. *Id.* (citing *Dumond v. State,* 294 Ark. 379, 743 S.W.2d 779 (1988)). The prejudice must be real and have some demonstrable detrimental effect and not merely have some abstract or theoretical effect. *Id.*

Lee argues that there was a conflict of interest in the instant case that entitles him to "automatic relief." It is Lee's specific contention in this appeal that, in circumstances in which a criminal defendant or his lawyer alleged a conflict of interest before trial or at trial, the circuit judge must relieve counsel and appoint separate counsel or take adequate steps to ascertain whether the risk of an actual conflict of interest is too remote to warrant appointment of separate counsel. Lee relies on the United States Supreme Court's holding in *Holloway v. Arkansas* for that proposition. 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978).

Lee's reliance on *Holloway* is misplaced. The *Holloway* case involved an alleged conflict of interest arising from defense counsel's being forced to represent codefendants over a timely objection.[7] In the case at hand, Lee does not assert that there was a conflict of interest because his attorneys were forced to represent a codefendant. Rather, he asserts that his trial counsel and he had a breakdown of trust.

The United States Supreme Court has since expounded further on the *Holloway* automatic-reversal rule. *See Mickens v. Taylor,* 535 U.S. 162, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002). This court applied *Mickens* in a case with facts analogous to those at hand. *See Townsend v. State,* 350 Ark. 129, 85 S.W.3d 526 (2002) (Townsend asserted a conflict of interest when he sued his attorney while he was representing him in a criminal case). In *Townsend,* this court said:

> In *Mickens,* the Court rejected the argument that automatic reversal is required whenever a trial court neglects a duty to inquire into a potential conflict. Instead, the Court held that an "actual conflict of interest" means "a conflict that *affected counsel's performance,* as opposed to a mere theoretical division of loyalties." ... Until a defendant shows that his counsel *actively represented* conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance. Thus, in the absence of an "actual conflict," a defendant alleging counsel's performance was deficient due to a conflict must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." In other words, an analysis of a conflict of interest under *Mickens* requires the same kind of analysis—and the same kind of *demonstration* of prejudice— that is required under *Strickland v. Washington,* as opposed to the *presumption* of prejudice (and the consequent automatic reversal) that was explained in *Holloway.*

7. In *Holloway,* the defense counsel expressed his concern to the trial judge that he would be unable to adequately represent the interests of each defendant because he had received confidential information from each of them. Specifically, the attorney was concerned that one of the defendants could testify in a way that would harm another defendant's interest, and the attorney would be unable to represent both defendants in such a situation.

*Id.* at 134–35, 85 S.W.3d at 528–29 (internal citations omitted).

In the instant case, Lee has not shown a conflict of interest that actually affected his attorneys' performance. He has also failed to show that any conflict between his attorneys and him had an actual, demonstrable, detrimental effect on their representation of him. *Sheridan,* 331 Ark. at 4, 959 S.W.2d at 31. In sum, Lee was required to show that there was a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* He has not done so.

### B. *Waiver*

■ Lee also contends that the circuit judge erred in finding that he waived any claim to relief based on an alleged conflict of interest. He asserts, and testified at the August 2007 hearing, that he was misled into telling the judge that he wanted to waive any conflict-of-interest claim. Lee further urges that, under Sixth Amendment jurisprudence, any waiver he may have made is no longer valid because he reasserted his conflict-of-interest claim just before the second trial, which was five months after he allegedly waived it.

We decline to reach the merits of this point because we conclude that it is unnecessary. Lee has not shown that the conflict of interest he raises had anything but an "abstract or theoretical" effect on his defense. *See Sheridan,* 331 Ark. at 5, 959 S.W.2d at 31. Because he makes no showing of an adverse impact on his trial, it is not relevant to the disposition of the instant appeal whether he effectively waived any claim regarding a conflict of interest.

### C. *Alibi Witnesses*

■ For his next point, Lee claims that Simpson and Qualls rendered him in-

effective assistance of counsel because they did not call certain alibi witnesses in the second trial in 1995, which resulted in the conviction and the death penalty. Lee asserts that the following were alibi witnesses at the first trial in 1994, which ended in a mistrial, and that they were available and willing to testify during the second trial: Stella Young, Lee's mother; Howard Lewis Young, Lee's brother; Patricia Young, Lee's sister; and Corey Briscoe, a family friend. According to Lee, Sandra Smith, his cousin, was also available and willing to be an alibi witness for him during the second trial, even though she did not testify in the first trial. Lee testified at the August 2007 hearing that he asked Simpson and Qualls to call the alibi witnesses during the second trial.

The State responds that Lee's trial attorneys did not render ineffective assistance of counsel in failing to call these witnesses at the second trial. Simpson testified at the August 2007 hearing that Qualls and he determined that the witnesses were inconsistent and not credible and that they did not believe the witnesses had been helpful to Lee in the first trial. Simpson also testified that Qualls and he had discussed all witnesses with Lee, who agreed with their recommendation not to call them in the second trial. Qualls added that Simpson and he had believed that the State's case was weaker during the second trial and that had factored into their decision not to call the alibi witnesses. Qualls testified that "we didn't feel like the State's witnesses had come across as good in the second trial as the first trial. We wanted to stay on the attack and attack their witnesses, not give them anything to attack."

At the conclusion of the State's case during the guilt phase of the second trial, the following colloquy took place between the court and Lee:

THE COURT: Mr. Lee, Mr. Qualls has stated that he and Mr. Simpson and Mr. Adams had conversed with you and your family and that you had concurred in the decision that y'all would rest at the conclusion of the State's case; is that correct?

LEE: Yes, sir. That's correct.

In rejecting Lee's argument that Simpson and Qualls rendered ineffective assistance of counsel on this point, the circuit court found that "the decision not to call any of the alibi witnesses in the guilt phase at the second trial was a reasoned, strategic decision of counsel, with which the defendant agreed."

▇ It is well settled that an attorney's decision not to call a particular witness is largely a matter of professional judgment, and the fact that there was a witness or witnesses who could have offered testimony beneficial to the defense is not, in itself, proof of counsel's ineffectiveness. *See, e.g., Dumond,* 294 Ark. at 387, 743 S.W.2d at 783. In the instant case, evidence procured at the August 2007 hearing substantiates that Lee's attorneys made a strategic decision that it was in his best interest not to call the alibi witnesses at the second trial. This decision was based on their determination that the witnesses had presented conflicting testimony during the first trial and that the State's case in the second trial was weaker. Furthermore, the record reflects that, at the time the decision was made to rest after the State's case, without presenting witnesses, Lee agreed with his attorneys' decision.

Under these circumstances, in order to find that Lee's counsel rendered ineffective assistance of counsel by failing to call the alibi witnesses, this court would have to rely on the "distorting effects of hindsight" that the Supreme Court has cautioned against. *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. We hold that it was

not clearly against the preponderance of the evidence for the circuit judge to find that Lee's "allegation of ineffective assistance of counsel for failure to call the alibi witnesses is without merit."

▇ Lee also argues that it was ineffective not to call these alibi witnesses because his attorneys told the jury in opening statement that they would be called. Lee cites authority from other jurisdictions for the proposition that this amounted to ineffective assistance of counsel. Lee, however, did not include this argument in his amended Rule 37 petition, and the circuit judge did not address it in his findings of fact and conclusions of law. Thus, the issue is not preserved for review on appeal. *Fisher v. State,* 364 Ark. 216, 223, 217 S.W.3d 117, 123 (2005) (this court was precluded from considering an issue for the first time on appeal where it was not raised in the Rule 37 petition).

## II. *Penalty Phase*

As already referenced, Dale Adams, an attorney who practices in Little Rock, was asked by the circuit judge to represent Lee during the penalty phase of his second capital murder trial, which he agreed to do. Lee now raises several issues of ineffective counsel relating to the penalty phase.

### A. *Mitigation Specialist*

▇ Lee first contends that Adams rendered ineffective assistance of counsel by failing to secure a mitigation specialist as part of the defense team. In doing so, he relies heavily on guidelines and comments in The American Bar Association Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases ("ABA Guidelines"). These guidelines, he points out, conclude that "a mitigation specialist is also an indispens-

able member of the defense team throughout all capital proceedings." ABA Guidelines 4.1A cmt. Lee, however, does not tell the court that the guidelines, and specifically section 4.1A, underwent a comprehensive revision, and the current version was adopted in 2003.

Adams testified at the August 2007 hearing that he did not have a mitigation specialist, as the term is now understood, during Lee's trial. He also made it clear, though, that no one at that time was trained as a mitigation specialist. Adams testified that he did employ a former state trooper, who worked for the Death Penalty Resources Center and "was quite experienced in death penalty cases," as a mitigation fact investigator.

■ ⌐15In reviewing an attorney's conduct in light of challenges to the sufficiency of representation, this court will "evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. While Adams testified that he would do certain things differently now, it was not ineffective assistance of counsel to fail to engage the services of a mitigation specialist, where Adams testified that no one was trained in that way at the time.

The State also emphasizes that Lee must fail on this point on appeal because he has failed to show how he was prejudiced by Adams's failure to hire a mitigation specialist. The State is correct. Lee does not point to any evidence that would have been discovered by a mitigation specialist that was not discovered by the mitigation fact investigator Adams hired. Even if this court determined that it was unreasonable and ineffective for Adams not to hire a mitigation specialist, Lee would have to show that there "is a reasonable probability that, absent the errors, the sentencer ... would have concluded that the balance of aggravating and miti-

gating circumstances did not warrant death." *Id.* at 695, 104 S.Ct. 2052. Lee has not done so.

## B. *Mitigation Witnesses*

■ Lee next urges that Adams rendered ineffective assistance of counsel because he did not present essential mitigation evidence. Lee specifically argues that Adams failed to call his mother, Stella Young, and his sister, Lynn Williams, to testify as mitigation witnesses; that he failed to prepare his uncle, Charles Booker, and his aunt, Shelby Smith, properly for their mitigation testimony; and that Adams failed to offer physical evidence in the penalty⌐16phase that might "humanize" him. He again relies on the ABA Guidelines, which were significantly revised in 2003, many years after his trial.

Stella Young and Lynn Williams both testified at the August 2007 hearing that they were not asked to testify at the penalty phase of the second trial but would have been willing to do so. Stella Young testified further that Adams had not asked her for any photos or videos of Lee. Adams testified at the August 2007 hearing that he would now offer that sort of physical evidence in a death penalty case. He said that he "do[es] a lot of things differently today in mitigation."

With respect to Lee's argument that Adams should have called his mother, Stella Young, to testify as a mitigation witness, the record reflects that Adams was instructed by Lee not to do so. Regarding the other testimony and evidence that Lee argues should have been presented to the jury during the penalty phase, Lee fails to show how he was prejudiced by the lack of that evidence. In his brief before this court, Lee makes the conclusory statement that "[a] heart-felt, moving plea from grieving family members *might* have

caused some juror to spare Lee's life." Lee also contends that proper preparation "could have *perhaps*" caused his aunt and uncle to give such testimony. However, the *Strickland* test required Lee to show that, but for the alleged error in Adams's representation, there was a reasonable probability that the jury "would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." 466 U.S. at 695, 104 S.Ct. 2052.

The guarantee of effective assistance of counsel clearly encompasses the penalty phase of a criminal trial, and this court has recognized that the failure to present *any* testimony during the mitigation phase of the trial fails to pass constitutional muster. *See, e.g., State v. Smith,* 368 Ark. 620, 622–23, 249 S.W.3d 119, 121–22 (2007) (citing *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). However, this court has further held that the decision not to offer certain mitigating evidence is a matter of trial strategy where the decision is made after a full investigation of the facts. *See Wooten v. State,* 351 Ark. 241, 245–46, 91 S.W.3d 63, 66 (2002).

In the instant case, the circuit judge, following the Rule 37 hearing in 2007, noted that Adams called Lee's aunt and uncle, friends and acquaintances of Lee, and an expert witness during the penalty phase of the trial. These witnesses, according to the judge, gave testimony that Lee did not deserve to die, that he was not a violent person but one who "never got into trouble growing up," that he "was an excellent worker who was nice and got along with his fellow workers," and that he was born to an unwed teenage mother and did not have a father figure at home, among other things. Furthermore, the record reflects that Lee asked Adams not to call his mother in the penalty phase. Adams also testified that he hired a mitigation fact investigator who had experience with death penalty cases, and there were family members who gave mitigation evidence.

Under these circumstances, we hold that the circuit court did not err in finding that Adams "was not ineffective in his preparation and presentation of the penalty phase of the trial."

## C. *Sheila Dodson*

Lee further contends that it was ineffective assistance of counsel for Adams not to call Sheila Dodson as a witness in the penalty phase of the trial. The State relied on the testimony of a woman, J.P., who had been brutally raped, as an aggravating circumstance. The State, in addition, introduced the testimony of Vernadean Brazear of the Pulaski County Circuit Clerk's office, that Lee had been tried and convicted for that rape. Sheila Dodson testified as an alibi witness for Lee at the rape trial and related to the jury that she had spoken to Lee on the telephone during the evening that J.P. was raped. Lee contends that Adams erred in not calling Dodson as an alibi witness in the penalty phase of the trial to refute the State's evidence that Lee raped J.P.

Adams testified at the August 2007 hearing that he decided not to call Dodson as a witness during the penalty phase of the Reese murder trial because he "had an experience with her in a previous case [J.P.'s rape trial], and it was not a good experience." Adams further testified that he "made a strategic decision not to use her." Given that the decision about whether to call a certain witness is largely a matter of professional judgment, the circuit court did not err in finding that "Adams'[s] decision not to call Dodson to rebut the defendant's guilt of crimes for which he had been convicted, was a matter of trial strategy." *Dumond,* 294 Ark. at 387, 743 S.W.2d at 783.

608

## D. *Closing Argument*

▮ During the prosecutor's closing argument in the penalty phase of the trial, she said Lee "is a hunter. This is his habitat. And his prey were the people of Jacksonville from 1990 to 1993. And the people of Jacksonville didn't even know they were being hunted." In his closing argument, Lee's counsel asked the jury "who are we then to say that we are going to kill Ledell Lee?" In her rebuttal, the prosecutor said, "I will tell you who we are. We are the hunted." Adams did not object to these statements. On appeal, Lee claims that the prosecutor's statements were "grossly improper and inflammatory" and "were deliberately calculated to create intense fear in the mind of each and every juror." Lee asks this court to grant him a new sentencing trial.

At the August 2007 hearing, Adams acknowledged that he did not hear the prosecutor's statements and said that he "just missed it." The circuit court found that the prosecutor's statements were improper, and "an objection would in all likelihood have been sustained." The judge found further, however, that the statements were not "so egregious and inflammatory that the defendant was denied a fair trial."

▮ The failure to object during closing statements generally falls within the wide range of permissible professional legal conduct because "experienced advocates differ about when, or if, objections are called for." *See Cothren v. State*, 344 Ark. 697, 710, 42 S.W.3d 543, 552 (2001) (quoting *Sasser v. State*, 338 Ark. 375, 391, 993 S.W.2d 901, 910 (1999)). But even if it was error for Adams to fail to object to the prosecutor's statements, before Lee can

prevail, he must show, under *Strickland,* that there is a reasonable probability that the jury would have imposed a different sentence if the prosecutor had not made the statements. *Id.* at 710, 42 S.W.3d at 552.

Adams's failure to object was clearly not part of his strategy because he testified at the August 2007 hearing that he "just missed it." The jury, however, heard testimony of the violent nature of the Reese murder during the penalty phase and also heard testimony that Lee had raped three different women in Jacksonville.[8] Under these circumstances, we conclude that Lee has not met his burden to show that there is a reasonable probability that the jury would have imposed a different sentence if Adams had objected to the prosecutor's statements.

## E. *In-court Identification*

▮ As part of the penalty phase, the State called A.S. to testify that she had been raped and to tell the jury about the circumstances of the attack. Charges were pending against Lee at the time for the rape of A.S. Prior to her testimony during Lee's penalty phase, A.S. had not been able to identify Lee as her rapist. On cross-examination, Adams asked A.S. if she could identify her attacker. She responded, "I think I would know him if I saw him." During redirect examination, A.S. identified Lee as the man who had raped her. Lee maintains that Adams opened the door for A.S. to identify him, and the error amounted to ineffective assistance of counsel. The State responds that it was reasonable trial strategy for Adams to highlight to the jury that A.S.

8. Lee had been convicted of raping J.P. on September 21, 1995, the month before the Reese murder trial. Lee was convicted of raping L.D. on October 19, 1995, three days after the jury sentenced him to death for the

Reese murder. The case against Lee for the rape of A.S. was nolle prossed after Lee was found guilty and sentenced to death in the Reese murder.

had never been able to identify her attacker.

Adams testified at the August 2007 hearing that, in retrospect, it was a mistake to ask A.S. if she could identify her attacker and that he asked her "one too many questions." The circuit judge found that Adams's question was "intended to point out to the jury that [A.S.] could not identify the defendant as her attacker." The circuit judge found that the strategy "backfired" but that A.S.'s "surprise identification" of Lee did not amount to ineffective assistance of counsel.

Given that there is a strong presumption that an attorney's conduct "might be considered sound trial strategy," we affirm the circuit judge on this point. *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052. It was not unreasonable for Adams to attempt to educate the jury that A.S. had never been able to identify Lee as her attacker, even if the strategy "backfired," as the circuit judge found. Furthermore, Lee has not shown a reasonable probability that the jury would have imposed a different sentence if Adams had not elicited an identification by A.S.

### F. *DNA Testing*

As already discussed, during the penalty phase of the trial, the State presented evidence to the effect that Lee had raped three women. To support that aggravating evidence, the State offered the expert testimony of Hal Deadman of the Federal Bureau of Investigations ("FBI"). Deadman testified about DNA samples that were taken from the rape victims and told the jury that the samples taken from the victims matched samples taken from Lee. Lee now urges that Adams rendered ineffective assistance of counsel by not seeking to have the samples tested at an independent laboratory. The State responds that Lee has failed to show that an

independent test of the DNA samples would have resulted in exculpatory evidence.

At the August 2007 hearing, Adams testified that he did not have the DNA tested by an independent entity because he did not believe that there was such a place, other than the FBI, to have DNA samples tested at that time. Adams testified that he did hire an expert to look into the FBI's protocol. According to Adams's testimony, the expert did not discover any problems with the FBI's procedures. The circuit judge found that Lee had not presented proof that the samples could have been independently tested at the time of trial and that it was not ineffective assistance of counsel for Adams to fail to do so. The circuit judge did not err in this regard because an attorney's effectiveness is judged based on his perspective at the time of the trial. *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052.

Affirmed.