Cite as 2020 Ark. 147

# SUPREME COURT OF ARKANSAS
No. CR-19-257

| | | |
|---|---|---|
| SCOTTY RAY GARDNER | APPELLANT | Opinion Delivered: April 16, 2020 |
| | | APPEAL FROM THE FAULKNER COUNTY CIRCUIT COURT [NO. 23CR-16-194] |
| V. | | |
| STATE OF ARKANSAS | APPELLEE | HONORABLE CHARLES E. CLAWSON, JR., JUDGE |
| | | AFFIRMED. |

**RHONDA K. WOOD, Associate Justice**

Scotty Gardner appeals his capital-murder conviction and death sentence. For reversal, he argues that the circuit court erroneously (1) denied him the right to self-representation, (2) refused to offer a non-model "mercy" jury instruction, and (3) included two aggravating jury instructions offered by the State. We affirm.

## I. *Background*

In March 2016, Scotty Gardner and his girlfriend, Heather Stubbs, were living together in a motel room in Conway. On the day of the murder, Gardner and Heather returned to the motel room from church when an argument ensued. Heather pushed Gardner, and he threw her onto the bed. As the pair struggled, Gardner tried to choke Heather with his hands. When she continued to fight him, he took the cord from a curling

iron and wrapped it several times around her neck, strangling her. The motel clerk found Heather lying face down in the room later that day.

After the murder, Gardner took $240 and two cell phones from Heather's possessions. Gardner drove to Hot Springs and then Oklahoma, where he and two other men went gambling. Gardner sold one of Heather's phones for $150. He also sold an iPad and a watch in the casino parking lot. The men returned to Hot Springs the following morning.

After Gardner was arrested, he confessed to strangling Heather. He also confessed in a recorded telephone conversation with his ex-wife, Jewel McGinty, and in a letter to McGinty. During the telephone call, Gardner reminded McGinty that he had previously told her "that bitch [Heather] is going to make me kill her." In the letter, Gardner wrote that prior to the murder he had told McGinty that he would "kill [Heather's] punk ass" and stated that she "got what she deserved."

A Faulkner County Circuit Court jury convicted Gardner of capital murder and sentenced him to death. On appeal, Gardner argues that the circuit court should have allowed him to represent himself, that it erred in refusing to use his non-model jury instruction stating the jury had the option of extending mercy in assessing his punishment, and that it erroneously instructed the jury on two aggravating circumstances.

II. *Analysis*

A. Self-Representation

Gardner first argues that the circuit court erroneously denied his right to self-representation under the United States and Arkansas Constitutions. *See Faretta v. California*, 422 U.S. 806 (1975). We affirm because Gardner's request to self-representation was not unequivocal.

A defendant has a constitutional right to self-representation under the Sixth Amendment of the United States Constitution and Article 2, Section 10 of the Arkansas Constitution. A defendant may invoke his right to defend himself provided that (1) the request to waive the right to counsel is unequivocal and timely asserted; (2) there has been a knowing and intelligent waiver; and (3) the defendant has not engaged in conduct that would prevent the fair and orderly exposition of the issues. *Pierce v. State*, 362 Ark. 491, 498, 209 S.W.3d 364, 368 (2005). Every reasonable presumption must be indulged against the waiver of a fundamental constitutional right. *Hatfield v. State*, 346 Ark. 319, 57 S.W.3d 696 (2001).

When determining whether an attempt to waive counsel and begin self-representation is sufficiently unequivocal, we must view the defendant's statements in their entirety. *See Finch v. State*, 2018 Ark. 111, 542 S.W.3d 143; *Reed v. State*, 2017 Ark. 246, 524 S.W.3d 929. A request to waive counsel must not leave any doubt that the waiver of counsel is what the defendant wants. *See Reed*, 2017 Ark. 246, at 3, 524 S.W.3d at 930 (explaining that "Reed's statements in this case presented an inconsistent picture to the court of his commitment to the idea of self-representation").

Here, Gardner's request to waive was not unequivocal. During a pretrial hearing on a motion to continue filed by his attorneys, Gardner interjected and told the court that he did not want it to grant the motion to continue. When the circuit court indicated that it would defer to Gardner's counsel regarding the time they needed to prepare his defense, Gardner stated, "I don't want them on my case. . . . Your Honor, I'd ask to represent myself or get some other attorney. She's lied to me three times. He's lied to me. I don't want people lying to me. This is my life." When the circuit court ruled that it would grant the motion to continue, Gardner stated simply, "I ain't got nothing else to say to 'em."

Gardner's statements, taken in their entirety, represent his frustration with his counsel, not an unequivocal request to waive his right to counsel. Gardner previously had filed three pro se pleadings asking the circuit court, among other things, to appoint him new counsel. He never mentioned self-representation in any of these motions. Gardner made no other statements during any of the pretrial hearings or at trial indicating that he wanted to represent himself. "We have repeatedly held that a request to proceed pro se is not unequivocal if it is an attempt on the part of the defendant to have another attorney appointed." *Dennis v. State*, 2016 Ark. 395, 10–11, 503 S.W.3d 761, 768. Because Gardner's request was not unequivocal, the circuit court did not err in denying his right to waive counsel.

B. Non-Model "Mercy" Jury Instruction

Gardner next argues that the circuit court erred in refusing to give his non-model jury instruction informing the jury that it had the option to extend mercy in assessing his

punishment for capital murder. Gardner's proffered instruction informed the jury that it "may show mercy simply by finding that the aggravating circumstances do not justify imposition of the death sentence." Instead, the circuit court instructed the jury with AMI Crim. 2d 1008, which states that in order to return a death sentence, it must find "[t]hat the aggravating circumstances justify beyond a reasonable doubt the sentence of death."

"Non-model instructions are to be given only when the circuit court finds that the model instructions do not accurately state the law or do not contain a necessary instruction on the subject." *Perry v. State*, 2014 Ark. 535, at 6–7, 453 S.W.3d 650, 654. The circuit court does not have to give a proffered instruction simply because it contains a correct statement of the law. *Id.* We will not reverse the circuit court's decision on whether to submit a jury instruction absent an abuse of discretion. *Id.*

Here, the circuit court was not required to give the proffered "mercy" instruction because the model jury instruction accurately states the law. Although AMI Crim. 2d 1008 does not contain the word "mercy," it permits the jury to conclude that the aggravating circumstances do not justify beyond a reasonable doubt a death sentence. *Kemp v. State*, 324 Ark. 178, 919 S.W.2d 943 (1996). The instruction properly informs the jury of the gravity of its decision and that it has the discretion to weigh the factors and determine whether to impose the death penalty. Therefore, we affirm the circuit court's refusal to give Gardner's proffered jury instruction.

C. Aggravating Circumstances

Third, Gardner argues that in the penalty phase of trial, substantial evidence did not support the circuit court's submission of two aggravating circumstances to the jury. The circuit court instructed, and the jury concluded, that Gardner had committed capital murder for pecuniary gain and in an especially cruel or depraved manner.

We review the circuit court's decision to submit an aggravating circumstance for substantial evidence. *Dimas-Martinez v. State*, 2011 Ark. 515, 385 S.W.3d 238. Evidence is substantial if it is forceful enough to compel reasonable minds to reach a conclusion without having to resort to speculation or conjecture. *Reid v. State*, 2019 Ark. 363, 588 S.W.3d 725. We view the evidence in the light most favorable to the State. *Id.*

Gardner first argues that the State did not offer substantial evidence that he murdered Heather for pecuniary gain. Although he admitted that he took Heather's property after he murdered her, he claims the State did not offer substantial evidence that his motive at the time of the killing was financial gain.

We have previously held that "proof of theft from the victim can support a finding that a capital murder was committed for pecuniary gain." *Thessing v. State*, 365 Ark. 384, 401, 230 S.W.3d 526, 539 (2006); *see also Nooner v. State*, 322 Ark. 87, 907 S.W.2d 677 (1995). In *Thessing*, the defendant took the victim's car, television set, silverware, Bible, and other items of personal property from her home after he killed her. 365 Ark. at 401, 230 S.W.3d at 539. We stated that given "the vast array of items [Thessing] removed from the victim's home," the State presented substantial evidence to the jury that he committed the murder for pecuniary gain. *Id.*

6

Here, Gardner admitted that he removed $240 and two cell phones from Heather's possessions or belongings after he murdered her. In his taped confession to police, Gardner also admitted that he had planned to go to Hot Springs with a friend before the murder. After the murder, Gardner went to Hot Springs and then to Oklahoma to gamble with two other men. One of the men testified that he purchased one of Heather's phones from Gardner. The State also introduced evidence that Gardner sold an iPad and a watch in the casino parking lot and surveillance video footage showing Gardner gambling in the casino the day he murdered Heather.

Gardner argues that taking the property was merely an afterthought and not the motive for Heather's murder. However, there was evidence that in addition to the cash, he took personal property and sold it. Although Gardner told police and Jewel McGinty that he committed the murder because the couple had been arguing and he was tired of her complaining, the jury was not required to believe him and was free to draw its own conclusions after considering all the evidence presented at trial. *Hill v. State*, 331 Ark. 312, 962 S.W.2d 762 (1998). Therefore, we conclude that substantial evidence supported the circuit court's giving the jury instruction on murder for pecuniary gain.

Second, Gardner argues that the circuit court should not have instructed the jury on the aggravating circumstance of "especially cruel or depraved murder" and that substantial evidence did not support the jury's finding. On the aggravating circumstance of cruelty, the jury was instructed as follows:

7

A capital murder is committed in an especially cruel manner when, as a part of a course of conduct intended to inflict mental anguish upon the victim prior to the victim's death, mental anguish is inflicted. Mental anguish is defined as the victim's uncertainty as to his ultimate fate.

No particular length of time is required for a victim to face uncertainty as to her ultimate fate. *See Anderson v. State*, 353 Ark. 384, 108 S.W.3d 592 (2003). In *Anderson*, the defendant's initial shot did not kill the victim, and the defendant heard him moaning before shooting him again in the back of the head. *Id.* The State presented evidence that the victim would have lived several minutes after the first shot even though it was fatal. *Id.* And although several seconds passed between the first and second shot, during that time the victim was uncertain as to his ultimate fate, and therefore, suffered mental anguish. *Id.*

Similarly, here, the State admitted evidence that Gardner and Heather struggled before he killed her. Gardner admitted that Heather was trying to get out of the room when he shoved her onto the bed and began choking her. When Heather continued fighting him, Gardner grabbed the curling iron and wrapped the cord around her neck. According to the medical examiner, once Gardner started choking Heather with the cord, she would have had ten to fifteen seconds of consciousness and would have flailed in an effort to get away as her air supply was being restricted. Heather's murder was not instantaneous. She certainly would have been uncertain as to her own fate as she began losing consciousness. Physical evidence suggested she struggled for a period of time. We therefore agree that the State presented substantial evidence that Heather suffered mental anguish as Gardner murdered her.

Gardner also argues that the circuit court erroneously instructed the jury on depraved-circumstance murder. This instruction stated, "A capital murder is committed in an especially depraved manner when the defendant relishes the murder or shows an indifference to the suffering of the victim and evidences a sense of pleasure in committing the murder." At trial, the argument surrounding the cruel-and-depraved-murder aggravating circumstance focused on whether there was substantial evidence of mental anguish. Gardner's trial counsel did not raise the particular argument of lack of substantial evidence of the depraved manner. On appeal, he argues that while the argument was unpreserved, the fourth *Wicks* exception should apply because the error affected his substantial rights. *Wicks v. State*, 270 Ark. 781, 787, 606 S.W.2d 366, 370 (1980). But as we have previously noted, the fourth *Wicks* exception, which is based on Ark. R. Evid. 103(d), "at most applies only to a ruling which admits or excludes evidence," which is not the issue here. *Buckley v. State*, 349 Ark. 53, 66, 76 S.W.3d 825, 833 (2002). Therefore, we do not consider on appeal whether this depraved-manner instruction should have been given because the issue is not preserved for our review. *Smith v. State*, 343 Ark. 552, 39 S.W.3d 739 (2001).

## D. Rule 10 and Rule 4-3(i)

Finally, when a sentence of death is imposed, we conduct an additional review of the record under Rule 10 of the Arkansas Rules of Appellate Procedure-Criminal, and Rule 4-3(i) of the rules of the Arkansas Supreme Court. Pursuant to Rule 10 and Rule 4-3(i), the record has been examined and no reversible error exists.

Therefore, we affirm the Gardner's capital-murder conviction and sentence.

Affirmed.

*Teri L. Chambers* Arkansas Public Defender Commission, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Christopher R. Warthen*, Ass't Att'y Gen., and *Joseph Karl Luebke*, Ass't Att'y Gen., for appellee.