Cite as 2024 Ark. 16

# SUPREME COURT OF ARKANSAS
**No.** CR–23–411

| | |
|---|---|
| | **Opinion Delivered:** February 15, 2024 |
| RICKY LEWIS NEAL<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. 60CR-21-616]<br><br>HONORABLE KAREN D. WHATLEY, JUDGE<br><br><br>AFFIRMED. |

**KAREN R. BAKER, Associate Justice**

On December 1, 2022, a Pulaski County Circuit Court jury convicted appellant, Ricky Lewis Neal, of first-degree murder, for which he was sentenced as a violent-felony habitual offender to a term of life imprisonment. On appeal, Neal presents two points: (1) the circuit court failed to make adequate inquiries under *Faretta v. California*, 422 U.S. 806 (1975), and the Arkansas Constitution when Neal repeatedly expressed dissatisfaction with his appointed counsel and sought to represent himself before trial; and (2) the circuit court abused its discretion by admitting hearsay upon hearsay in the testimony of a witness about a lost voicemail in which the victim said that Neal was trying to kill her. We affirm.

This appeal stems from the death of Neal's fiancée, Alice Cawley, on December 24, 2020. On February 22, 2021, Neal was charged with first-degree murder, and the felony information alleged that Neal was subject to an extended term of imprisonment as a habitual offender because he had been convicted of four or more felonies. *See* Ark. Code Ann. § 5-

4-501(b) (Supp. 2019). On September 29, 2022, the State filed an amended information alleging that Neal was subject to the "three strike" sentence enhancement because he had been convicted of two or more felonies involving violence. *See* Ark. Code Ann. § 5-4-501(d). Neal's jury trial was held November 30–December 1, 2022, and he was convicted of first-degree murder.

## I. *Facts and Procedural History*

The evidence presented at trial demonstrated that Neal and Cawley were engaged and had been in a romantic relationship for nearly twenty years. Neal had taken up residence at a motel in North Little Rock, and Cawley was staying overnight with him on December 24, 2020. Michelle Grimes, Cawley's neighbor, testified that Cawley called her at approximately 12:30 a.m. on December 24 asking if Grimes would pick her up from the motel. Grimes testified that she agreed to give Cawley a ride after she got off work at 7:00 a.m. Grimes testified further that she had been unable to reach Cawley when she finished her shift but that after she learned of Cawley's murder, she discovered that she had received a voicemail from Cawley between 2:00 and 2:30 a.m. that said, "Mimi, come get me. This man is trying to kill me."

Utsav Patel, the front-desk clerk at the motel where Neal had been residing, testified that during his overnight shift, he received a call from Neal's room asking him to call 911 because someone in the room had been injured. At approximately 4:38 a.m., officers with the North Little Rock Police Department were dispatched to the motel. Officers testified that Patel unlocked the door to Neal's room, but Neal announced that he could not come to the door because he was blind and because Cawley was lying in front of the door. When

the door was pushed open far enough to see inside the room, officers observed Cawley lying on the floor with a knife next to her body and Neal sitting on a walker nearby. Neal confessed to law enforcement that he had stabbed Cawley but explained that he "didn't know it was her." It was later determined that Cawley had been stabbed eleven times.

Neal agreed to talk to law enforcement, and his interview was played for the jury. During this interview, Neal explained that he and Cawley had been packing her clothes just prior to the incident because Cawley had arranged for a cab to take her back home. According to Neal, while he was taking some of Cawley's clothes toward the front door, someone grabbed him from behind and he started "swingin[g] and stickin[g]" with his pocketknife because he did not know who had grabbed him. Neal claimed that, because he is blind, he did not know that it was Cawley until he felt her hair as she fell to the ground. Neal explained that earlier in the night, Cawley had thought she heard someone at the door to Neal's motel room, and although Neal thought the sound was the air conditioner, he put his open pocketknife in his pocket for protection.

On December 1, 2022, Neal was convicted and sentenced as described above. The sentencing order was filed on December 7, 2022, and this timely appeal followed.

A.     Pretrial Representation Issues

On April 18, 2022, Neal filed the first of three pro se motions requesting that the circuit court relieve his appointed counsel, Leslie Borgognoni and Andrew Thornton, and appoint new counsel. In his motion, Neal stated that he had "limited knowledge of the law and [was] not qualified to represent himself . . . [and] genuinely need[ed] an Attorney's help[.]" However, Neal claimed that his attorneys would not communicate with him or

3

honor his requests concerning how to proceed with his case, and he specifically took issue with the fact that he had allegedly not been consulted by his counsel about the decision to seek a mental evaluation. On April 25, 2022, the circuit court held a pretrial hearing during which it denied Neal's motion, assuring Neal that he had "two really good lawyers" that were acting in his best interest.

On May 10, 2022, Neal filed another motion requesting that the circuit court relieve his current counsel and appoint new counsel. This motion restated the same allegations from the initial motion involving his appointed counsel. On September 19, 2022, the circuit court held another hearing during which it denied Neal's motion, once again assuring Neal that he had adequate representation.

On October 4, 2022, Neal filed his third and final motion to relieve his current counsel and to have new counsel appointed. Neal claimed once more that he was not qualified to represent himself but that he needed an attorney's help with his case. This motion contained similar allegations with respect to certain qualms Neal had about his counsel, but it also asserted that he was dissatisfied because his *Miranda* rights had allegedly not been read to him before he made a statement to law enforcement. Neal also raised concerns about Judge Chris Piazza signing the order for a mental evaluation, given that Judge Barry Sims had been assigned to his case. Neal complained further that the circuit court had told his counsel to advise Neal against mentioning the victim's alleged drug use if he were to testify at trial and that this conversation between his counsel and the court violated the Arkansas Rules of Professional Conduct.

On October 10, 2022, Neal's motion was taken up at the omnibus hearing. After the circuit court cautioned Neal against directly addressing the court against the wishes of his current counsel, Neal stated for the first time that his counsel had been dismissed from his case and that he was representing himself. The circuit court asked Neal if he had ever been to law school, and Neal replied that he had not. Nevertheless, Neal claimed that his counsel had misled him; he had never been before a judge until "four or five months ago"; there had never been an evidentiary hearing in his case; somebody had falsified documents in his case to make it appear as though Judge Piazza signed the order for mental evaluation; Judge Piazza lacked the authority to sign the order; and he had never been read his *Miranda* rights. The circuit court denied Neal's motion to relieve counsel and his request to represent himself. That same day, Neal's case was re-called for further discussion of his representation. Neal explained that his brother was going to hire a different attorney to represent him and that he wanted to represent himself until that time. The circuit court further inquired about the extent of Neal's legal knowledge and training and noted that Neal's lack of access to the evidence in his case would prevent him from representing himself. Neal then stated "[W]e can just forget about that, Your Honor[,]" and the circuit court explained that, while Borgognoni and Thornton would continue to represent him for the time being, Neal should contact the court if his brother hired a new attorney to represent him.

On November 14, 2022, the circuit court held another hearing during which it addressed the issue of Neal's representation. The circuit court asked Neal whether he had hired other counsel, to which he responded, "No ma'am. I—what we decided is I'm going [to] go ahead and use what I already got since they had already got started." The circuit

court sought to confirm that Neal wished to retain Borgognoni and Thornton, and Neal explained that, while he did not really want to retain his current counsel, another attorney had advised him to do so. The circuit court then questioned Neal once more regarding whether he wished to represent himself, to which he responded, "So, no, I'm going to leave it like I already got it." In response to the discussion from the prior hearing regarding Neal's alleged lack of access to the evidence in his case, the State then clarified that Neal would be able to get a copy of the State's file if he was going to represent himself. The circuit court then asked:

THE COURT: In light of that, do you want to represent yourself or you still—

NEAL: I want to—

THE COURT: —are you still good with what we talked about?

NEAL: Is what I want, I want a copy of the court docket. Everything that been filed. Everything that been done in my case. That's what I like to have.

DEFENSE
COUNSEL: I'll say, Your Honor, I'm happy to send, printout a copy of the docket and send him what's been filed on the docket.

THE COURT: Okay. So, Mr. Neal, Mr. Thornton's going to get you that. But that still leads to my question. Are you still good with letting Ms. Borgognoni and Mr. Thornton represent you?

NEAL: Who?

THE COURT: Your attorneys. Are you still good with them representing you?

NEAL: I don't have no choice.

THE COURT: Well, that's what we're trying to get to the bottom of right here.

6

NEAL:              And I don't—I don't—I don't—I don't have no choice. I don't have no choice. And I want the courts to know that, that I did not have no choice. And another thing I like for the court to know that even though I might be blind, but I'm no fool. And I don't like for them to treat me like that, try to take my—my handicap and use it against me. And this is what they been doing. This is what they been doing. And I don't appreciate it. I don't appreciate the little smart things that they say. I don't—I don't appreciate the way they talk to me. They talk to me like, well, I'm going to leave that alone.

…

THE COURT:         Okay. But hang on, I'm going to let you get whatever is on your mind out. But first, we need to make sure that I have a clear record on this. So you have stated that you are not going to represent yourself; is that correct?

NEAL:              Well, you know I can't represent myself noway, Your Honor. I wouldn't even know how to start.

THE COURT:         Okay.

NEAL:              I wouldn't even know how to start, so—

THE COURT:         Okay[.]

The circuit court then allowed Neal to speak freely, and Neal proceeded to complain about the order for a mental evaluation, the alleged lack of an evidentiary hearing in his case, and the length of time he had been waiting for an omnibus hearing and a trial. The circuit court assured Neal that it would review his case to ensure that there was nothing of concern and noted that his next appearance would be at his trial. Following additional complaints from Neal regarding his attorneys and how he did not wish to speak with them anymore, the circuit court encouraged Neal to communicate with his counsel. Neal raised no further concerns regarding his representation, and he proceeded to trial with his appointed counsel.

7

B.     Pretrial Motion in Limine

On November 28, 2022, Neal filed a motion in limine seeking to exclude Michelle Grimes's testimony that she had received a voicemail from Cawley just before Cawley's death asking Grimes to come get her because "this man was trying to kill her[.]" In his motion, Neal asserted that such testimony was hearsay pursuant to Rule 801(c) of the Arkansas Rules of Evidence and therefore inadmissible under Rule 802. Neal also alleged that Grimes's testimony was inadmissible under Rule 403 because its probative value was substantially outweighed by the danger of unfair prejudice or misleading the jury.

On the morning of trial, the circuit court heard arguments on this motion. Neal first asserted that Cawley's statement from the voicemail was inadmissible because "it was hearsay[.]" Neal then argued that Grimes's testimony was not the best evidence of what was said in the voicemail, and there was no evidence that the voicemail itself could not have been retrieved for purposes of trial.[1] The circuit court found that Cawley's statement was admissible under Arkansas Rule of Evidence 803(1) and (3), the hearsay exceptions for the declarant's present-sense impressions and then-existing mental, emotional, or physical condition. Further, the circuit court overruled Neal's objection that the voicemail itself, rather than Grimes's testimony describing Cawley's statement contained in the voicemail, was the best evidence of the statement.

II. *Points on Appeal*

A. Self-Representation

---

[1]The record demonstrates that the voicemail was not introduced into evidence because Grimes no longer had the cell phone at the time of trial.

8

For his first point on appeal, Neal contends that the circuit court failed to make adequate inquiries under *Faretta*, *supra*, and the Arkansas Constitution when he repeatedly expressed dissatisfaction with his appointed counsel and sought to represent himself before trial.

A defendant has a constitutional right to self-representation under the Sixth Amendment of the United States Constitution and article 2, section 10 of the Arkansas Constitution. *Gardner v. State*, 2020 Ark. 147, at 3, 598 S.W.3d 10, 13. In *Faretta*, the United States Supreme Court held that "in order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits [traditionally associated with the right to counsel]." *Faretta*, 422 U.S. at 835; *see also Dennis v. State*, 2016 Ark. 395, at 9, 503 S.W.3d 761, 767. The Court further noted that, "[a]lthough a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta*, 422 U.S. at 835 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)).

This court has long recognized the crucial aspect of informing an accused of his right to represent himself, along with the attendant risks. *Hatfield v. State*, 346 Ark. 319, 325, 57 S.W.3d 696, 700 (2001). We have said that a criminal defendant may invoke his right to defend himself pro se provided that (1) the request to waive the right to counsel is unequivocal and timely asserted, (2) there has been a knowing and intelligent waiver of the right to counsel, and (3) the defendant has not engaged in conduct that would prevent the

9

fair and orderly exposition of the issues. *Pierce v. State*, 362 Ark. 491, 498, 209 S.W.3d 364, 368 (2005). The circuit court maintains a weighty responsibility in determining whether an accused has knowingly and intelligently waived his right to counsel. *Hatfield*, 346 Ark. at 325, 57 S.W.3d at 700. Every reasonable presumption must be indulged against the waiver of fundamental constitutional rights. *Walton v. State*, 2012 Ark. 336, at 8, 423 S.W.3d 56, 61.

Neal argues that he was denied his constitutional right to self-representation because the circuit court repeatedly dissuaded him from representing himself at trial and failed to ensure that he understood the potential pitfalls of self-representation. Neal asserts that he acquiesced to a trial with his appointed counsel as a result. The State responds that Neal's arguments are meritless because he failed to unequivocally assert his desire to waive his right to counsel and to proceed pro se. Specifically, the State argues that Neal's statements must be viewed in the context of the whole record, and when viewed in their entirety, Neal's statements demonstrate his frustration with his counsel and desire for new counsel as opposed to an unequivocal request to waive his right to counsel.

When determining whether an attempt to waive counsel and begin self-representation is sufficiently unequivocal, we must view the defendant's statements in their entirety. *Gardner*, 2020 Ark. 147, at 3, 598 S.W.3d at 13. A request to waive counsel must not leave any doubt that the waiver of counsel is what the defendant wants. *Id*. We have repeatedly held that a request to proceed pro se is not unequivocal if it is an attempt on the part of the defendant to have another attorney appointed. *Dennis*, 2016 Ark. 395, at 10–11, 503 S.W.3d at 768. In *Dennis*, we affirmed the circuit court because Dennis did not

unequivocally invoke the right to represent himself. *Id.* at 10, 503 S.W.3d at 767–68. Despite Dennis's initial request to proceed pro se, he abandoned that request at a later hearing and sought the removal of his counsel and appointment of new counsel. *Id.* In *Reed v. State*, Reed had initially requested to represent himself at a pretrial hearing, but after multiple statements revealing Reed's uncertainty, such as "I'm debating whether to represent myself or let [my current counsel] represent me[,]" the circuit court ruled that his invocation was equivocal. 2017 Ark. 246, at 3, 524 S.W.3d 929, 930. We affirmed the circuit court's finding because Reed's statements "presented an inconsistent picture to the court of his commitment to the idea of self-representation[,]" and demonstrated that "Reed harbored doubts about representing himself." *Id.* In *Gardner*, *supra*, Gardner disagreed with his counsel regarding the need for a continuance and stated, "I don't want them on my case. . . . Your Honor, I'd ask to represent myself or get some other attorney." 2020 Ark. 147, at 4, 598 S.W.3d at 14 (omission in original). We held that the circuit court did not err in denying Gardner's right to waive counsel because his request to represent himself was not unequivocal. *Id.* Specifically, we explained that his statements, taken in their entirety, merely represented his frustration with his counsel rather than an unequivocal request to waive his right to counsel. *Id.*

Here, as in *Dennis*, *Reed*, and *Gardner*, a holistic review of Neal's statements demonstrates that his request to represent himself was equivocal. In his pretrial motions requesting the appointment of new counsel, Neal stated that he was not qualified to represent himself and genuinely needed assistance from an attorney. During the October 10 omnibus hearing, Neal requested that the circuit court allow him to represent himself only

until his brother hired new counsel for him. During the November 14 pretrial hearing, Neal initially explained to the circuit court that he had decided to retain his current counsel because another attorney had advised him to do so. Although the circuit court had incorrectly indicated that Neal would not have access to his case file and focused on his lack of legal knowledge and training when considering his request to represent himself, once it was made clear to Neal that the State was willing to provide him with a copy of the case file, Neal stated, "[Y]ou know I can't represent myself noway, Your Honor. I wouldn't even know how to start."[2] As a whole, the record demonstrates that Neal had doubts about representing himself and that he was merely dissatisfied with his counsel—not that he intended to waive his constitutional right to counsel. Accordingly, the circuit court did not deny Neal his constitutional right to self-representation, and we affirm the circuit court on this point.

## B. Hearsay

For his second point on appeal, Neal contends that the circuit court abused its discretion by admitting hearsay upon hearsay through Michelle Grimes's testimony describing a voicemail from Cawley stating that Neal was trying to kill her. Challenges to

---

[2]We note that it was indeed improper for the circuit court to focus on Neal's lack of legal knowledge or training in its pretrial rulings. In *Faretta*, *supra*, the United States Supreme Court explained that Faretta's technical legal knowledge was not relevant to an assessment of his invocation of the right to defend himself at trial. *Faretta*, 422 U.S. at 836. However, we were faced with a similar situation in *Dennis*, *supra*, wherein we reasoned that, "Dennis's point is well taken that the circuit court focused on the irrelevant concerns of his level of education and technical legal knowledge in its ruling . . . . In another case, such a ruling might provide cause to reverse. However, we find no reversible error here because Dennis did not unequivocally invoke the right to self-representation." *Dennis*, 2016 Ark. 395, at 10, 503 S.W.3d at 767. Having found that Neal did not unequivocally invoke his right to self-representation, we similarly find no reversible error in the present case.

the admissibility of evidence are left to the sound discretion of the circuit court, and a judge's ruling on these matters will not be reversed absent an abuse of discretion. *Dixon v. State*, 2011 Ark. 450, at 11, 385 S.W.3d 164, 173. Abuse of discretion is a high threshold that does not simply require error in the circuit court's decision but requires that the circuit court acted improvidently, thoughtlessly, or without due consideration. *Id.*

Neal asserts that the voicemail itself was one layer of hearsay, Grimes's testimony describing the contents of the voicemail was an additional layer of hearsay, and the State failed to establish an exception for either layer. Neal asserts that this erroneous admission was prejudicial because the State used Grimes's testimony as its chief evidence of Neal's intent. The State responds that Cawley's statement, "Mimi, come get me. This man is trying to kill me[,]" was clearly admissible under Rule 803(3) of the Arkansas Rules of Evidence.

Arkansas Rule of Evidence 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Rule 802 provides that "[h]earsay is not admissible except as provided by law or by these rules." Ark. R. Evid. 802. Rule 803(3) provides that the following is not excluded by the hearsay rule:

> A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition, such as intent, plan, motive, design, mental feeling, pain, and bodily health, but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

Ark. R. Evid. 803(3).

The circuit court did not abuse its discretion in admitting Cawley's statement demonstrating her fear that Neal was trying to kill her, because we have expressly held that

13

a victim's statement of fear of a defendant falls within the exception contained in Rule 803(3). *See, e.g.*, *Dickey v. State*, 2016 Ark. 66, at 4, 483 S.W.3d 287, 289. Further, we do not reach the merits of Neal's argument that the voicemail itself was an additional layer of hearsay requiring its own exception under our rules of evidence because he did not raise this argument below. We do not address arguments that are raised for the first time on appeal. *Hicks v. State*, 2017 Ark. 262, at 10, 526 S.W.3d 831, 838. Likewise, parties cannot change the grounds for an objection on appeal but are bound by the scope and nature of their objections as presented at trial. *Id*. Therefore, this claim is not preserved for our review. Accordingly, we affirm the circuit court on this point.[3]

### III. *Rule 4-3(a) Review*

Pursuant to Arkansas Supreme Court Rule 4-3(a), the record has been reviewed for all objections, motions, and requests that were decided adversely to Neal, and no prejudicial error was found.

Affirmed.

*David Sudduth*, Public Defender, by: *David R. Raupp*, Arkansas Public Defender Comm'n, for appellant.

*Tim Griffin*, Att'y Gen., by: *Brooke Jackson Gasaway*, Ass't Att'y Gen., for appellee.

---

[3]To the extent that Neal intended to raise an argument that Grimes's testimony was not the best evidence of Cawley's statement under Rule 1002 of the Arkansas Rules of Evidence, he fails to develop this argument, and we decline to address it. We do not consider an argument when the appellant presents no citation to authority or convincing argument in its support, and it is not apparent without further research that the argument is well taken. *Gay v. State*, 2016 Ark. 433, at 8, 506 S.W.3d 851, 857.